Christian T. Johnson, OSB #182025
cjohnson@selmanlaw.com
SELMAN LEICHENGER EDSON
HSU NEWMAN MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
Telephone: 206.447.6461
Facsimile: 206.588.4185

Justin Landreth, WSBA #182025
*Pro Hac Vice Pending*
jlandreth@selmanlaw.com
SELMAN LEICHENGER EDSON
HSU NEWMAN MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
Telephone: 206.447.6461
Facsimile: 206.588.4185

*Attorneys for Plaintiff MESA UNDERWRITERS*
*SPECIALTY INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, an New Jersey corporation,<br><br>                 Plaintiff,<br><br>v.<br><br>MIDWAY VISHIONS, INC., a California corporation; and LYMAN MINUGH, an individual,<br><br>                 Defendants. | Case No.:　3:24-cv-1032<br><br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Page 1 - COMPLAINT FOR DECLARATORY JUDGMENT

## INTRODUCTION

In this action, Plaintiff Mesa Underwriters Specialty Insurance Company ("MUSIC") seeks declaratory relief concerning its obligations, if any, to provide insurance coverage to its insured, Midway Vishions, Inc. ("Vishions"), in connection with the underlying claims in the state court action that was filed in Multnomah County Circuit Court of the State of Oregon and styled as *Lyman Minugh v. MiniNail, LLC, et al.*, Case No. 23CV42308 ("State Court Action").   On November 14, 2023, the State Court Action was removed to United States District Court for the District of Oregon, Case No. 3:23-cv-01681 (the "Underlying Action").

In the Underlying Action, Plaintiff Minugh ("Minugh") seeks damages for alleged burn injuries caused by a vaping smoking device.  But the MUSIC Policy excludes coverage for liability for bodily injury caused, in whole or in part, by devices used for ingesting marijuana and natural or synthetic nicotine, including vaporizers.  The MUSIC Policy also excludes coverage for liability for bodily injury that did not occur on the store premises operated by Vishions, such as the injuries alleged to have been sustained at Minugh's residence which are at issue in the Underlying Action. Accordingly, MUSIC seeks a declaration that it owes no duty to defend Vishions or to pay any judgment or other indemnity to Minugh in the Underlying Action.

## PARTIES

1.     MUSIC is a corporation organized under the laws of New Jersey and has its principal place of business in New Jersey.  Thus, MUSIC is a citizen of New Jersey.

2.     On information and belief, Vishions is a company that is incorporated in California with a principal place of business in California.  Vishions, therefore, is a citizen of California.

3.     On information and belief, Minugh is an individual residing in Oregon.  Minugh, therefore, is a citizen of Oregon.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over all parties.

5.      In this action, MUSIC seeks declaratory relief regarding its obligations for an underlying claim under an insurance policy issued to Vishions with relevant limits of insurance in excess of $75,000.  On information and belief, Minugh seeks in excess of $75,000 in damages from Vishions.

6.      Actual, real, and currently justiciable controversies exist between the parties as to the issues described herein.  A declaration from the Court on those issues will permit the parties to order their affairs accordingly.  Under 28 U.S.C. § 2201, the Court has authority to issue a declaratory judgment resolving these controversies.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 2201 and under 28 U.S.C. § 1332 because MUSIC is a citizen of New Jersey, Vishions is a citizen of California, Minugh is a citizen of Oregon, and the amount in controversy exceeds $75,000.

8.      Venue is proper in this district because the Underlying Action is pending in this Court, Minugh filed in Multnomah County Circuit Court of the State of Oregon the operative complaint ("Complaint"), and the events described therein also occurred in Multnomah County.

## FACTUAL ALLEGATIONS

A.      **The Underlying Action**

9.      On October 13, 2023, Minugh filed in Multnomah County Circuit Court of the State of Oregon the Complaint, which names as defendants MiniNail, LLC ("MiniNail") and Vishions. A true and correct copy of the Complaint is attached hereto as Exhibit 1.

10.     The Complaint alleges that MiniNail manufactured and/or imported small electronics, including electronic vaporizers ("Vaporizer(s)"), and then sold those items to

authorized retail stores, including Vishions' retail store ("Store").

11.     The Complaint also alleges that one such Vaporizer was marketed and sold by MiniNail under the "Enail" brand; that the Vaporizer is described by MiniNail as follows: "MiniNail Enail with Heater Coil" ("Enail").

12.     The Complaint further alleges that, on or about October 23, 2020, Minugh purchased an Enail from a Vishions' Store.

13.     It is also alleged that the Enail was sold with certain promotional materials, as well as a user manual with instructions and a printed warranty, all of which MiniNail provided.

14.     The Complaint also alleges that the Enail was assembled and used by Minugh in accordance with MiniNail's instructions in all material respects.

15.     It is alleged in the Complaint that, on or about October 19, 2021, while Minugh was using the Enail in Multnomah County, Oregon, the Enail's heating coil ("Coil") had been set to approximately 968 degrees Fahrenheit.  It is also alleged that, after the Enail was knocked off of a level surface, the Coil severely burned the following areas of Minugh's body: (1) his left foot (burning it down to the tendons); (2) his left index finger (burning it down to the bone); (3) his left buttock; and (4) his chest.

16.     The Complaint asserts the following causes of action against Vishions and MiniNail: (1) strict product liability; (2) breach of an implied warranty of merchantability; (3) breach of an implied warranty of fitness for a particular purpose; and (4) breach of an express warranty.  The Complaint also asserts a negligence claim against MiniNail only.  In the Complaint, Minugh seeks compensatory damages from Vishions and MiniNail, including noneconomic damages up to, but not exceeding, $25 million.

17.     Vishions previously tendered the defense and indemnity of the Underlying Action to MUSIC.  MUSIC is providing a defense to Vishions in the Underlying Action subject to a complete reservation of rights.

**B.**     **The MUSIC Insurance Policy**

18.     MUSIC issued policy number MP0004018005898 (the "MUSIC Policy") to named insured Ramy Guirguis ("Guirguis") DBA: VISHIONS SMOKE SHOPE.  Upon information and belief, Vishions is a business owned and/or operated by Guirguis.  The MUSIC Policy has a policy period of February 13, 2021, to February 13, 2022.  A true and correct copy of the MUSIC Policy is attached hereto as Exhibit 2.

19.     The MUSIC Policy includes the following relevant portions of the insuring agreement:

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**      The amount we will pay for damages is limited as described in **Section III — Limits Of Insurance;** and

**(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

Page 5 - COMPLAINT FOR DECLARATORY JUDGMENT

20.    The MUSIC Policy contains the following relevant definitions:

**SECTION V - DEFINITIONS**

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.    "Products-completed operations hazard":

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.    Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was

Page 6 - COMPLAINT FOR DECLARATORY JUDGMENT

created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**21**.   "Your Product":

a.  Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)     You;

(b)     Others trading under your name; or

(c)     A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

b.  Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Page 7 - COMPLAINT FOR DECLARATORY JUDGMENT

(2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **(2)** The providing of or failure to provide warnings or instructions.

21. The MUSIC Policy also includes supplemental payment provisions, which provide, in relevant part, as follows:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   \*     \*     \*

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   \*     \*     \*

22. The MUSIC Policy includes the following Tobacco, Nicotine, or Nicotine Replacement Products Exclusion:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

Page 8 - COMPLAINT FOR DECLARATORY JUDGMENT

**EXCLUSION – TOBACCO, NICOTINE, OR NICOTINE REPLACEMENT PRODUCTS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following is added to Paragraph **2. Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY (SECTION I – COVERAGES):**

**Tobacco, Nicotine, or Nicotine Replacement Products**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation, ingestion, use, absorption, delivery, or consumption of, exposure to, existence or presence of or contact with any "tobacco, nicotine, or nicotine replacement products" used, handled, supplied, processed, altered, prepared, sold or manufactured by any insured or any other person or entity regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

B.  The following is added to **SECTION V – DEFINITIONS:**

"Tobacco, nicotine, or nicotine replacement products" means tobacco in any form; raw or cured tobacco; cigars and cigar wrappers; pipe tobacco; cigarettes; cigarette filters and papers; snuff; chewing tobacco; liquids or e-liquids used in electronic cigarettes; smokeless tobacco products; tobacco smoke including second hand smoke; tobacco substitutes; vaporized tobacco or nicotine; and nicotine and synthetic nicotine in any form.

"Tobacco, nicotine, or nicotine replacement products" includes any device used for the absorption, consumption, ingestion, inhalation or delivery of natural or synthetic nicotine or replacement nicotine, or any container, material, part, battery, atomizer cartridge, equipment or accessory, including, but not limited to: electronic or smokeless cigarettes, lozenges, discs, orbs, gases, mists, chew sticks and film strips, or applied patches or treatment in any form; hookahs, water pipes, vaporizers; or gaseous, liquid or solid residues or byproducts of tobacco or nicotine use, consumption, manufacturing or processing.

For purposes of this exclusion, any mineral, chemical, (including but not limited to those used to enhance flavor or fragrance such as ketones,

diketones, and related substances), fluid or aerosol or other product sprayed on, applied to, found within or used in conjunction with any "tobacco, nicotine, or nicotine replacement product" is deemed a part of such product.

All other terms and conditions of this policy remain unchanged.

23.     The MUSIC Policy also includes the following Marijuana or Marijuana Products

Exclusion:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION- MARIJUANA OR MARIJUANA PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.  The following exclusion is added to Paragraph **2. Exclusions of SECTION I. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY:**

**Marijuana or Marijuana Products**

This insurance does not apply to:

"Bodily Injury", "property damage" or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected:

**(1)** Inhalation, ingestion, absorption, exposure to or use of;
**(2)** Causing or contributing to the intoxication of any person due to the use of;
**(3)** Growing, manufacturing, processing, producing, storage, distribution or disposal of;
**(4)** Prescribing of or failure to prescribe; or
**(5)** Sale, handling, furnishing, delivery, transfer or possession of "marijuana", "marijuana products" or "synthetic marijuana".

B.  The following is added to **SECTION V – DEFINITIONS:**

"Marijuana" means all parts of the plant of the genus cannabis whether growing or not, dried or in any other physical state, including but not limited to the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the

Page 10 - COMPLAINT FOR DECLARATORY JUDGMENT

plant, its seeds, or its resin, including marijuana concentrate.

"Marijuana" includes but is not limited to marijuana, cannabis, cannabis sativa L., Indian hemp, tetra-hydrocannabinol, THC, cannabidiol, CBD, hashish, hemp, sinsemilla or any other term used for this substance. "Marijuana" does not include industrial hemp.

"Marijuana products" include any product or device used for the absorption, consumption, ingestion, inhalation or delivery of "marijuana", or any container, material, part, equipment or accessory, including, but not limited to: edible products, ointments, tinctures, lozenges, discs, orbs, gases, mists, chew sticks and film strips, or applied patches or treatment in any form; hookahs, water pipes, vaporizers; or gaseous, liquid or solid residues or byproducts of "marijuana" use, consumption, manufacturing or processing.

"Synthetic marijuana" (also known as synthetic cannabis, synthetic cannabin's, SCs, synncanns, or any of its many trade names) means any synthetic cannabinoids or any mixture containing synthetic cannabinoids.

All other terms and conditions of this policy remain unchanged.

24.   The MUSIC Policy further contains the following "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, which provides, in relevant part, as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| |
|---|
| Premises: |
| 3185 MIDWAY DR., SUITE F, SAN DIEGO, CA 92110 |
| Project or Operation: |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Page 11 - COMPLAINT FOR DECLARATORY JUDGMENT

A. If this endorsement is attached to Commercial General Liability Coverage Form CG 00 01, the provisions under this Paragraph A. apply:

1. Paragraph 1.b. under Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

   b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

      (1) The "bodily injury" or "property damage":

         (a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

         (b) Arises out of the project or operation shown in the Schedule;

      (2) The "bodily injury" or "property damage" occurs during the policy period;

         and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

## CLAIMS

### First Claim for Relief

### (Declaratory Judgment that MUSIC Has No Duty to

### Defend Vishions in the Underlying Action)

25.    MUSIC realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as through fully set forth herein.

26.    MUSIC and Defendants dispute whether MUSIC owes a defense to Vishions in the Underlying Action pursuant to the terms of the MUSIC Policy, including, but not limited to, the

Page 12 - COMPLAINT FOR DECLARATORY JUDGMENT

terms, exclusions, and endorsements recited above.

27.    An actual, justiciable controversy exists between MUSIC and Defendants, including whether MUSIC owes a duty to defend Vishions in the Underlying Action.

28.    The Court should declare that MUSIC does not owe Vishions a duty of defend in the Underlying Action.

## Second Claim for Relief

### (Declaratory Judgment that MUSIC Has No Duty to

### Indemnify Vishions in the Underlying Action)

29.    MUSIC realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as through fully set forth herein.

30.    MUSIC and Defendants dispute whether MUSIC has a duty to indemnify Vishions in the Underlying Action pursuant to the terms of the MUSIC Policy, including, but not limited to, the terms, exclusions, and endorsements recited above.

31.    An actual, justiciable controversy exists between MUSIC and Defendants including whether MUSIC owes a duty to indemnify Vishions in the Underlying Action.

32.    The Court should declare that MUSIC does not owe Vishions a duty to indemnify in the Underlying Action.

## Third Claim for Relief

### (Declaratory Judgment that MUSIC Has No Duty to

### Defendant Minugh for Any Indemnity)

33.    MUSIC realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as through fully set forth herein.

34.     MUSIC and Defendants dispute whether Minugh can recover any judgment or other indemnity from MUSIC based on the above policy provisions.

35.     An actual, justiciable controversy exists between MUSIC and Defendants, including whether MUSIC may owe a judgment or other indemnity to Minugh in the Underlying Action.

36.     The Court should declare that MUSIC owes no duty to Minugh for any indemnity in the Underlying Action.

**<u>Fourth Claim for Relief</u>**

**(Reimbursement of Amounts Paid in Defense of Vishions in the Underlying Action)**

37.     MUSIC realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as through fully set forth herein.

38.     Vishions previously tendered the defense and indemnity of the Underlying Action to MUSIC.  MUSIC agreed to provide a defense to Vishions under a complete reservation of rights, including the right to bring this action and to seek reimbursement of all amounts paid in the defense of uncovered claims.

39.     MUSIC is incurring, and will continue to incur, attorneys' fees and other related costs to defend against claims that were not potentially covered in the Underlying Action, since the date it issued its reservation of rights letter to Vishions.

40.     Under governing law, and particularly the California Supreme Court's decisions in *Buss v. Superior Court*, 16 Cal. 4th 35 (1997) and *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643 (2005), MUSIC is entitled to recover from Vishions the amounts it expended (and will expend in the future) in the defense of uncovered claims.

## PRAYER FOR RELIEF

WHEREFORE, MUSIC prays for judgment as follows:

1.      On the First Claim for Relief, for a declaration that MUSIC owes no duty to defend Vishions in the Underlying Action;

2.      On the Second Claim for Relief, for a declaration that MUSIC owes no duty to indemnify Vishions in the Underlying Action;

3.      On the Third Claim for Relief, for a declaration that MUSIC owes no judgment or other indemnity to Minugh in the Underlying Action;

4.      On the Fourth Claim for Relief, for a judgment reflecting MUSIC's entitlement to recoup amounts paid (and to be paid in the future) in the defense of Vishions in the Underlying Action for claims that were not covered under the MUSIC Policy; and

5.      For such other and further relief this Court deems just and proper.

DATED:  June 26, 2024

By:  _s/ Christian T. Johnson_
Justin Landreth, WSBA# 44849
Pro Hac Vice Pending
Christian T. Johnson, OSB #182025
SELMAN LEICHENGER EDSON HSU
NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101-4129
Telephone: 206.447.6461
jlandreth@selmanlaw.com

*Attorneys for Plaintiff MESA UNDERWRITERS
SPECIALTY INSURANCE COMPANY*